**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SCOTT MARTIN, GALYN MARTIN** | ) | |
| **MARC DRISKILL, PEGGY DRISKILL,** | ) | |
| **FAYE GOINS** | ) | **CASE NO._____** |
| | ) | |
| **Plaintiffs,** | ) | **JURY DEMANDED** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **EGYPTIAN LACQUER MANUFACTURING** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Come now the Plaintiffs, SCOTT MARTIN, GALYN MARTIN, MARC DRISKILL, PEGGY DRISKILL, and FAYE GOINS, individually, and file this Complaint against Egyptian Lacquer Manufacturing Company ("ELMCO"), seeking injunctive relief and just compensation for the harms they have suffered and continue to suffer as a result of the release of hazardous substances from ELMCO's facility, and for their Complaint they state as follows:

### I. STATEMENT OF THE CASE

This is a civil action brought to hold ELMCO accountable for the hazardous substances it has released into the environment and has permitted to migrate off of its property. Those hazardous substances have impacted Plaintiffs and their property, and as a result of ELMCO's failure to respond appropriately to the release, those substances continue to impact Plaintiffs on an ongoing basis. In particular, this action seeks

declaratory and injunctive relief, the imposition of civil penalties, and restitution under the Solid Waste Disposal Act, "SWDA" as amended by the Resource Conservation and Recovery Act, 42 U.S.C. § 6972 (b) and 6945 (hereafter "RCRA" and also referred to as the "Solid Waste Disposal Act") and the same relief under the Clean Water Act, 33 U.S.C. § 1251, and 1365 *et seq*, ("CWA"). Plaintiffs also bring civil claims of nuisance, trespass, negligence, and negligence *per se* in which they seek injunctive relief and compensatory damages. Because ELMCO's intentional or reckless behavior permitted the hazardous substances to be released and to migrate off-site unabated for several months after ELMCO was put on notice that it was releasing such substances, Plaintiffs also seek punitive damages in an amount sufficient to punish ELMCO for its wrongful behavior and sufficient to deter ELMCO and similarly situated parties from engaging in such behavior in the future. Plaintiffs' claims arise from ELMCO's admitted releases and discharges from its manufacturing facility of hazardous substances into the ground, the groundwater and surface waters, including Liberty Creek and the Harpeth River, in the vicinity of ELMCO's facility. ELMCO operates a paint and lacquer manufacturing facility at 113 Fort Granger Drive, Franklin, Tennessee 37064-2918 on approximately 2.9 acres of land with improvements. Environmental assessments undertaken by, and tests conducted by, contractors retained by and for the benefit of ELMCO and its lawyers reveal the presence on ELMCO's property, and releases by ELMCO into the areas surrounding ELMCO's facility, of numerous toxic and hazardous substances, including toluene, acetone, benzene, methyl isobutyl ketone (MBK), methyl ethyl ketone (MEK), naphthalene, trimethylbenzene, carbon disulfide, n-Propylbenzene, ethylbenzene, methylene chloride, sec-butylbenzene and xylenes. Plaintiffs are residents of Franklin,

Tennessee who live in the vicinity of ELMCO's facility and have been impacted and continue to be impacted by the releases and discharges.

## II.  JURISDICTION and VENUE

1.      This Court has subject matter jurisdiction over the claims arising under the federal environmental statutes pursuant to 33 U.S.C. § 1365(a) (citizen enforcement of the Clean Water Act), 42 U.S.C. § 6972 (a)(1)(A) & (B) (citizen enforcement of the Solid Waste Disposal Act) and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. 1367(a), over the common law claims because those claims form part of the same case and/or controversy as the claims arising under the federal environmental statutes.

2.      Venue is proper in this Court.  Venue is proper for the Clean Water Act claims pursuant to 33 U.S.C. § 1365(c) (1) because the violations occurred in Williamson County, which is located in this District.  Similarly, venue is proper for the claims arising under the Solid Waste Disposal Act pursuant to 42 U.S.C. § 6972 because the violations of that Act occurred in Williamson County, which is located in this District.  Venue is also proper under the general venue statute codified at 28 U.S.C. § 1391(b) because the Defendants maintain their principal places of business in this District and the property at issue in this action is located in this District.

## III.  PARTIES

3.      Plaintiffs Scot and Galyn Martin are husband and wife who own property and reside at 131 Daniels Drive in Williamson County.  The Scott home is on a cul-de-sac in a residential neighborhood less than one mile east and downgrade of ELMCO's

facility.  Their backyard faces out to the Harpeth River, and it is less than one hundred feet from the bank of the River.

4.    Plaintiff Faye Goins is a widow who owns property and resides at 116 Daniels Drive in Williamson County.  The rear property line of the Goins home is on the same cul-de-sac as the Martins' house, also east and down-grade from the ELMCO plant. Her property is approximately 120 feet from the eastern edge of the ELMCO site.

5.    Plaintiffs Marc and Peggy Driskill are husband and wife.  They own property and reside with their children on Franklin Road, west of the site.  A portion of their land that is a vacant parcel is also east and down-grade from the ELMCO site with Liberty Creek to the west.  This portion of the Driskill property is in the direct path of the eastern plume of hazardous waste draining from the ELMCO site.

6.    Defendant Egyptian Lacquer Manufacturing Company, "ELMCO" is a corporation formed and doing business under the laws of the state of Tennessee.  The registered agent for service is Mr. Kerry Mattox.

## IV.  NOTICE PURSUANT TO SECTION 33 U.S.C. 1365

7.    Pursuant to 33 U.S.C.1365 (b), of the Clean Water Act, (CWA) and 42 U.S.C. §6972 (b) of the Solid Waste Disposal Act, (SWDA) Plaintiffs were required, prior to filing a citizen suit to provide written notice  to the polluter and articulate the scope of the violations including the lack of a permit for the discharges and effluent. Plaintiffs were required also to provide reasonable detail of the same such that the defendants served would have opportunity to correct the violations.  On or about May 12, 2008 a federal sixty (60) day notice  with a provision for the ninety day (90) period under 42 U.S.C. § (b) (2) (A) referring to actions presenting an imminent and substantial

endangerment to health or the environment was sent by certified mail to Defendant ELMCO, in care of Mr. Kerry Mattox. The letters were delivered with a return receipt. After the time expired and the conditions did not abate, this action was filed.

8.     Plaintiffs have complied with the sixty day notice requirements of the CWA and SWDA/RCRA.  The violations are ongoing and are likely to continue as the hazardous chemicals remain on the ELMCO site, and continue unabated to flow into the Harpeth River, Liberty Creek, the groundwater and soil surrounding the site and on Plaintiffs' properties.  The chemicals also cause a strong and foul odor in the area.

## V.  STANDING

9.     Each of the plaintiffs has a direct property interest that is affected by the discharges of hazardous waste and is within the underground plume coming from the ELMCO site. Each plaintiff has an aesthetic interest in the Harpeth River and Liberty Creek.  The Driskills own a portion of land that was used as part of an effort by ELMCO to intercept the discharges and pump out the 'free product' before it reached Liberty Creek.  The Driskills, and the Martins own land that borders Liberty Creek and the Harpeth River and have a recreational interest that is directly affected by the pollution and odor.

10.     Plaintiffs have standing to redress the violations alleged herein pursuant to 33 U.S.C. § 1365, 42 U.S.C. §6972 and relevant case law.

## VI.  FACTUAL ALLEGATIONS

11.     In response to citizen complaints of strong and foul odors in the neighborhood adjacent to the ELMCO site and along the Harpeth River, sampling

5

conducted in January of 2007 confirmed that acetone and toluene was seeping into Liberty Creek and the Harpeth River.

12.     ELMCO conducted an investigation of their above-ground solvent tanks at the request of the Tennessee Department of Environment and Conservation, (hereafter "TDEC").  The investigation in February of 2007 revealed corroded, leaking pipelines connected to above-ground storage tank(s) containing acetone and toluene.  The corroded line(s) discharged directly to the soil.

13.     When ELMCO was contacted by TDEC and asked to investigate whether it was the source, ELMCO knew right where to look, and it knew that it was the source. That is because in the Fall of 2006, a Phase II Environmental Assessment Study was conducted on the ELMCO site by August Mack, an environmental consulting firm.  A copy of the Phase II Report is attached as Exhibit 1 to this Complaint.  Figure 1 in the Phase II Report shows the location, marked as SB-1, where August Mack detected hazardous substances had been released into the environment from ELMCO'S tank farm. The Phase II Report confirmed that time that toluene, benzene, acetone, xylene, ethylbenzene, carbon disulfide, n-Propylbenzene and trimethylbenzene were present in soil samples taken adjacent to the above-ground storage tanks in which ELMCO stored the chemicals it utilized in the manufacturing process, which is exactly where ELMCO subsequently "discovered" leaks in February 2007.  The Phase II Report recommended that ELMCO do further investigation to determine whether the groundwater had been impacted and to determine whether the contamination extended beyond ELMCO's property lines.  ELMCO ignored those recommendations.  ELMCO neither reported the release to any authorities nor undertook any of the recommended follow-up testing.  Had

ELMCO followed those recommendations and done further investigation into the source and extent of the contamination, it would have prevented the release and discharge of some portion of the hazardous substances.

14.     On June 1, 2007 ELMCO entered into a Consent Agreement and Order (hereafter "Order") with TDEC.  A copy of that Order is attached as Exhibit 2 to this Complaint.  ELMCO agreed to delineate the extent of contamination in soil and groundwater and assume responsibility for the response to the seeps at Liberty Creek and Harpeth River.  Accordingly, ELMCO assumed responsibility for soil, groundwater and surface water assessment plans.  Although the Order was drafted in a manner designed to convey the impression that ELMCO had responded in a prompt and responsible fashion to a report of a possible release, the truth was to the contrary,  The truth was that ELMCO had sat for several months on information putting it on notice that it had suffered a release of hazardous substances and that those substances had likely impacted the groundwater and migrated off-site, and ELMCO had taken action to further investigate the release only when TDEC came knocking on its door.

15.     Three 'recovery trenches' were dug on the Driskill property to intercept hazardous chemicals flowing in groundwater to the west from the ELMCO site with the goal of catching some of the free product acetone and toluene in the groundwater before it reached Liberty Creek.  These trenches were dug by ELMCO's agents and or consultants on or about July of 2007, and they remained opened until the Fall of 2008.  Although the trenches have now been closed up, equipment remains in place on the Driskill property, rendering that portion of the Driskill property unfit for use so long as remedial activities continue.

7



(Photo of trench area condition, Driskill property in 2008.)

16.     Immediately south of the trenches on the Driskill property, ELMCO piled soil from the trenches and placed plastic tarps over the piles.  The soil was piled in an area of approximately one-half acre bordered by Liberty Creek to the immediate west and by the Harpeth River to the immediate south, within the flood plain of both water bodies. These "bio-piles" were allowed by ELMCO to 'off-gas' into the atmosphere without obtaining any type of permit for the discharge of those vapors as treatment for the contaminated soil.  The piles were spread across the property and seeded without any treatment other than the passive off-gassing.

17.     All of these areas cannot be used for recreation despite the fact that it is the most desirable area for recreation by the Driskill family and is connected to the parcel where the Driskills reside.

18.    Scott and Galyn Martin, (the "Martins") reside on their property, which they purchased in part for the aesthetic and recreational value of having the Harpeth River as part of their backyard.  The Martins' property is indicated by the number "131" on a map of the area directly adjacent to the ELMCO facility, which is attached as Exhibit 3 to this Complaint.  Since 2007, the Martins have noticed and complained of the odors from the chemical seeps.  In 2008, Mr. Martin's elderly mother was visiting and outside in the back patio area when she became physically ill and overcome by the chemical odors.  The Martins were told by consultants for ELMCO that the likely cause was kids using paint cans for graffiti under the railroad trestle that spans the Harpeth River closer to the ELMCO plant.  In fact, the Martins, and other residents in the area, have been advised repeatedly by ELMCO and its consultants that the release from ELMCO is not responsible for any unpleasant odors and that the release poses no health risks, through fumes or otherwise, to the Martins and their neighbors.  The Martins continue to smell the odors while in their yard and on their patio.  Recent soil gas samples conducted by ELMCO, which have not yet been officially released to the public, indicate that, contrary to ELMCO's repeated assertions of no risk, the concentrations of soil gas vapors in the impacted area are at levels that pose a risk to human health.

19.    The property owned by Faye Goins, which is indicated by "116" on Exhibit 3, backs up to the railroad tracks and is one of the first private properties traveling west and down-grade from the ELMCO site.  She has complained of and noticed the odors inside and outside of her house since January of 2007.  She has also been informed by ELMCO and its consultants that the release poses no health risks.

20.     Since entering the "Consent Order", ELMCO has failed to comply with all of its terms and conditions.

21.     Despite the disconnection of the leaking pipes and removal of some above-ground tanks, the ELMCO site continues to discharge hazardous waste to the groundwater, soil, and into Liberty Creek and the Harpeth River.  For example, toluene levels at Liberty Creek in March of 2008 and again in March of 2009 were approximately eight (8) times Regulatory Levels of Concern.



(Toluene seeping directly from the creek bank into Liberty Creek, by-passing the trenches on the Driskill property, taken March, 2009)

22.     Testing has confirmed that toluene, acetone, ethylbenzene, and benzene have been found in groundwater samples at levels above Regulatory Levels of Concern. Groundwater contamination showed the highest levels from sampling taken on the

ELMCO site property, indicating that in the absence of an effective remedial plan, contaminants will continue to migrate down-hill and discharge to surrounding areas.

23.     ELMCO has not investigated or determined the source of the benzene and chemicals other than the toluene and acetone that have been found during the monitoring process.

24.     The locations for three off-site monitoring wells were chosen by ELMCO and its consultants.  These wells were not placed until over a year after the discharges were identified and the state required ELMCO to identify the parameters of the plume. The three off-site wells are beyond 1000 feet to the west of the ELMCO boundaries, and approximately 800 feet to the north east which is also uphill. ELMCO has failed and refused to drill monitoring wells and test for groundwater contamination to the south or southeast of the ELMCO site or near the affected landowners despite the admitted fact that the plume extends in several directions as evidenced by the heavily flowing seep of hazardous waste to the south that is coming out of the bank of the Harpeth River.  As a result, ELMCO has not yet determined the extent of the plume of contamination, which can be determined only by drilling additional monitoring wells.

25.     Monitoring well number two (2) is located on the edge of the ELMCO site at the southern boundary in the direction of the Harpeth River.  Less than one year ago, but after the 60/90 day notice was received, ELMCO was aware of Benzene at levels nine (9) times the Regulatory Level of Concern, (RLC) and took no action to intercept off-site migration of this waste before it reached the Harpeth River, several hundred feet to the south and downhill.

26.    ELMCO has allowed these toxic and hazardous chemicals to seep continuously to the Harpeth River without any attempt to capture or treat the chemicals.

27.    ELMCO has not undertaken any study or biological assessment of what impact the flow of these chemicals has on the aquatic life of the Harpeth in and around the seep and has refused to place signs warning river-goers that there is a flow of chemicals from the bank of the river into the water.

28.    A soil gas study conducted at seven locations under the pavement of Daniels Drive in January of 2009, showed acetone, benzene, xylene, toluene and other chemicals at detection levels of significant concern.  Some of the results were found at three-foot borings.  ELMCO made no request to sample the soil gas in the yards of the plaintiffs, and instead chose to place test locations near the sewer line.  Accordingly, ELMCO admits that the proximity of the sewer line may "skew" the results.  ELMCO has not performed or authorized any testing in locations that are away from the sewer line and in backyards, where the vapors are not capped with pavement or potentially affected by sewer line vapors.  The vapor levels for the results obtained from the soil gas study were very high for Acetone, Benzene and Toluene at varying depths.

29.    All of the vapor constituents found at levels of significant concern were consistent with the chemicals being discharged from the ELMCO site.

30.    All of the chemicals alleged to be discharged in this complaint are considered hazardous wastes pursuant to federal law, including 40 C.F.R. Section 261.03, 261.21 and 24 and as it is defined in 42 U.S.C. Section 6903 (5) as that which may cause or contribute to an increase in mortality, incapacitating illness or pose a substantial

present or potential hazard to human health or the environment when improperly treated, stored, transported or disposed of.

31.     ELMCO managed, stored and utilized hazardous substances on its property. Under the SWDA/RCRA, those substances became "hazardous waste" upon their release into the environment. The discharge of those substances directly to the land and groundwater constitutes improper disposal without a permit in violation of 42 U.S.C. §§ 6924 and 6925.  These violations clearly began before October 2006, and based on the test results undertaken during the last three years, ELMCO began releasing hazardous substances into the environment years before the October 2006 Phase II Report.

32.     ELMCO's violation of a state or federal order pursuant to RCRA or a hazardous waste regulating program constitutes an actionable violation under the RCRA Citizen Suit provisions, 42 U.S.C. § 6972 et seq.  ELMCO violated the state "Consent Agreement and Order" by failing to 'aggressively' and timely prepare and execute a Comprehensive Air Monitoring Plan to determine if the residents were being exposed to levels of vapors that may affect their health as required by Item Nine (9) of the Order. That requirement has not been met in two years.

33.     Additionally, ELMCO violated Item One (1), in that large mounds of soil removed from a series of remediation trenches were left for substantial periods of time on the Driskill property as a 'bio-pile' without removal or treatment.  Remediation wastes were required to be managed within ninety days of generation.  The piles have been there for two years.

34.     ELMCO violated Item Two (2), of the Consent Order in that the Groundwater Assessment Plan provided does not adequately define the horizontal and

vertical extent of the contaminant plume. For two years, ELMCO has maintained that they have defined the plume, in spite of mounting data to the contrary and the discovery in monitoring well number 5 of contaminants. Well number five (5), the first off-site well, was drilled more than a year after the Consent Order and with the expectation that it would not reveal contaminants. However, the same hazardous waste was found, thereby establishing that the extent of the plume exceeded the earlier opinions of ELMCO and its consultants.

35.     ELMCO has violated Item Three of the order because it also failed to describe the current contamination conditions, evaluate the risks to health and environment, to provide a detailed description of the corrective action with evaluation of effectiveness, evaluate the potential health risk to the neighbors, or provide an "aggressive" schedule to implement the actions.

36.     ELMCO has paid no penalty to the state, nor reimbursed costs to the state associated with emergency response activities.

37.     Approximately thirty (30) months after identifying ELMCO as the source, hazardous waste continues to flow into Liberty Creek, the Harpeth River and in the soil and groundwater under the Plaintiffs' homes without abatement and without a comprehensive plan for treating the groundwater and soil

38.     The discharges to the Harpeth River and Liberty Creek constitute a substantial and imminent risk of harm to the environment and human health. Liberty Creek has been impacted substantially in that algae and bacterial growth is substantial in the stream bed and the aquatic life is non-existent except for a type of worm that is pollution tolerant. The Harpeth River is impacted by substantially decreased dissolved

oxygen levels attributable to the heavy and daily discharge of chemicals that take up the available oxygen, depriving the River and its aquatic life of dissolved oxygen needed for biological health. The Harpeth River will continue to be impacted until ELMCO develops and implements a plan to address the hazardous substances that are consuming the dissolved oxygen. The soil gas study demonstrates that the releases pose a continuing risk to human health.

39. ELMCO, its agents and consultants, and TDEC were advised of a technologically feasible and cost-effective clean-up solution prepared by a qualified and nationally recognized environmental engineering firm. ELMCO failed and refused to implement the solution. ELMCO has elected instead to allow toxic and hazardous chemicals from its facility to continue to seep out into Liberty Creek and the Harpeth River. Those releases will continue at levels above regulatory concern for the foreseeable future.

40. The Notices required under the CWA and SWDA/RCRA were prepared and delivered by certified mail, return receipt requested. Service of the letter was achieved on Mr. Kerry Mattox as the agent for ELMCO. More than 90 days has passed since service was obtained. The offending conditions remain.

## VII. COUNT I:
## CITIZEN SUIT FOR VIOLATIONS OF THE CLEAN WATER ACT

41. Plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

42. Pursuant to 33 USC Section 1251 (a), the objective of the Clean Water Act "is to restore and maintain the chemical, physical and biological integrity of the Nation's

waters." Violators of the Clean Water Act (CWA) restrictions are strictly liable pursuant to 33 USC Section 1311 (a).

43.     Pursuant to 33 USC section 1365 (a), any citizen may commence a civil action against any person who is alleged to be in violation of an "effluent standard or limitation" as defined by the CWA or any order issued by a state with respect to such standard or limitation. No such action may commence until after the expiration of sixty days of providing written notice of the alleged violations such that the violator may attempt to correct the violations.

44.     Plaintiffs provided adequate and sufficiently detailed notice in compliance with the relevant federal laws, and the violations have continued and are likely to continue.

45.     The term "effluent standard or limitation" is broadly defined for purposes of the CWA's Citizen Suit provisions, at 33 USC Section 1365(f) to include among other things, any unlawful act, including unpermitted releases, under 33 U.S.C. 1311.

46.     Defendant ELMCO has violated the Clean Water Act, in that it has violated an "effluent standard or limitation" within the meaning of 33 U.S.C. 1365, by continuously discharging pollutants into waters of the United States without a permit, which is a violation of 33 U.S.C. § 1311 (a) and 40 C.F.R. 122.21, and hence, a violation of an "effluent standard or limitation."

47.     These discharges also constitute a violation of Tennessee's state water quality laws and regulations, and the discharges substantially interfere with the recreational and aesthetic interests the Plaintiffs have in the area.

16

48.     The area of the seeps into the Harpeth River are marked only by a small colored flag and there is no sign alerting the public or recreational users that a chemical seep of hazardous waste is flowing out of the bank of the river.

49.     The discharges to Liberty Creek and the Harpeth River constitute discharges to waters of the United States under the Clean Water Act.

50.     Plaintiffs are entitled to an injunction against ELMCO, enjoining it from continued violations of the Clean Water Act.  In addition, ELMCO should be assessed statutory penalties under the Clean Water Act, and Plaintiffs are entitled to their attorney's fees.

## VIII.  COUNT 2:
## CITIZEN SUIT UNDER SOLID WASTE DISPOSAL ACT (RCRA)

51.     Plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

52.     Pursuant to the Solid Waste Disposal Act, 42 U.S.C. §6972 (a) (1) (B) a citizen may bring suit against any person who is a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed or is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

53.     Defendant ELMCO is a past and present generator, transporter, owner/operator of solid or hazardous waste within the meaning of  42 U.S.C. § 6903 (5) and (27).  The Defendant has discharged solid waste and hazardous waste at its site which has traveled and migrated through groundwater and soil onto the property of others and into the Harpeth River and Liberty Creek.   Although the hazardous substances that

ELMCO released into the environment were products that ELMCO stored at its facility for use in the manufacturing process, they became solid waste, and given their composition and characteristics, hazardous waste, upon their release into the environment.

54.     The chemicals ELMCO has released are "hazardous" within the meaning of the relevant federal and state laws, including, but not limited to the SWDA/RCRA. Those releases have created and continue to create a substantial and imminent risk of harm to the environment and to humans who live and recreate along the banks and in the waters of Liberty Creek and the Harpeth River.   Plaintiffs and the public cannot safely recreate in Liberty Creek or the Harpeth River because the contaminants are unrestrained and continuously flowing out of the ground and into the Creek and the River.

55.     As a direct and proximate result of Defendants' acts and/or omissions contributing to the past and/or present handling, storage, treatment, transportation, and/or disposal of solid and/or hazardous waste which may present an imminent and substantial endangerment to health or the environment, Defendants are liable for such endangerment under RCRA, pursuant to 42 U.S.C. § 6972 (a)(1)(B) and subject to orders of abatement and monitoring and such other relief as will protect the public and environment.

56.     Plaintiffs have complied with the notice requirements set forth in 42 U.S.C. §6972(b)(2)(A).

57.     Plaintiff has complied with all conditions precedent to bringing its RCRA claims against the Defendant under 42 U.S.C. §6972 and no action has been taken that would prevent the filing of this claim under §6972 (b)(2)(B) or (C).

58.     Plaintiffs are entitled to and request injunctive relief against ELMCO, ordering them to undertake and/or pay for any and all investigations, studies, monitoring, response, removal and remedial actions that may be necessary and/or required to abate, remediate, remove and otherwise address the environmental contamination at and near the site, Plaintiffs' properties, the impacted groundwater and soil in all those locations, Liberty Creek, and the Harpeth River. Plaintiffs are further entitled to injunctive relief requiring ELMCO to conduct adequate air sampling and vapor removal near the homes of the Plaintiffs and requiring ELMCO to take all additional actions the Court may deem necessary, pursuant to the remedial powers in 42 U.S.C. 6972(a)(1)(B), including imposing civil penalties.

59.     Plaintiffs are entitled to payment by this Defendant of fees and costs arising from the prosecution of the RCRA  claims including but not limited to attorney, expert, and court fees/costs pursuant to 42 U.S.C. §6972(e).

## IX.  COUNT THREE, TRESPASS

60.     Plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

61.     ELMCO has been releasing hazardous substances on to the Plaintiffs' properties, including into the soil and groundwater on those properties, for an extended period of time.  ELMCO was put on notice no later than October 2006 that it had released hazardous substances into the environment and that those substances had, in all likelihood, impacted the groundwater and had or was migrating off-site and would impact the properties of Plaintiffs' and their neighbors.  ELMCO's intentional decision to neither disclose its discovery of the contamination to its neighbors and TDEC nor to investigate

the extent of the contamination aggravated the harms that Plaintiffs have suffered and continue to suffer.

62.     Plaintiffs are entitled to enjoy the exclusive possession of their land. ELMCO did not have permission, express or implied, to trespass by an instrumentality such as the discharge of hazardous substances onto or across the land of the Plaintiffs.

63.     As a direct and proximate result of the trespass, Plaintiffs have sustained and continue to sustain damages. Those damages include, but are not limited to, material diminutions in the value of Plaintiffs' properties and the loss of Plaintiffs' enjoyment of their property. In addition, Plaintiffs' properties will require remediation in order to restore the properties to their prior conditions. Plaintiffs are entitled to collect those damages from ELMCO. Because those acts and omissions include intentional or reckless behavior by ELMCO that has aggravated the impacts on Plaintiffs, Plaintiffs are entitled to punitive damages from ELMCO sufficient to punish ELMCO and to deter ELMCO and similarly situated parties.

## XI.  COUNT FOUR, NEGLIGENCE

64.     Plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

65.     ELMCO had a duty to Plaintiffs and their neighboring landowners to take reasonable care to avoid the improper release of solid or hazardous waste discharged onto the site and onto neighboring land. ELMCO failed to inspect and repair its pipelines and or failed to properly install the lines to protect the lines from direct contact with soil that would lead to corrosion and leaking. Even after learning in the Fall of 2006 that there had been a release, ELMCO took no steps to inspect its lines or otherwise address the

release. The holes in the pipeline discovered in February of 2007, after TDEC requested ELMCO to inspect its premises, revealed long-term corrosion. Further ELMCO would reasonably been aware of a loss of inventory from the tanks had the Defendant made an attempt to inspect and keep records.

66. It is reasonably foreseeable that failing to inspect pipelines leading from above ground storage tanks containing hazardous chemicals and allowing a continuous leak of such chemicals over time would cause harm and pollute nearby property and create a risk of injury to others. After ELMCO learned no later than October 2006 that it had already experienced releases, ELMCO intentionally and recklessly avoided reporting the release to state and federal authorities and investigating to determine the extent of the off-site impacts of the release.

67. As a direct and proximate result of those failures by ELMCO, hazardous chemicals have discharged into the soil, groundwater and land of Plaintiff's properties. Those discharges and releases have caused and will continue to cause Plaintiffs to suffer harms. Those harms include, but are not limited to, damage to those properties. Moreover, Faye Goins and the Martins have been, and continue to be exposed, to chemicals at and above levels that pose a risk to human health, specifically including, but not limited to, a risk of contracting cancer. As a result, Mr. Goins and the Martins have a reasonable fear of contracting cancer or developing other illnesses as a result of their past and ongoing exposure to the substances that ELMCO has released.

68. ELMCO is liable to Plaintiffs for those harms, and Plaintiffs are entitled to collect damages from ELMCO for those harms. Because those acts and omissions include intentional or reckless behavior by ELMCO that has aggravated the impacts on

Plaintiffs, Plaintiffs are entitled to punitive damages from ELMCO sufficient to punish ELMCO and to deter ELMCO and similarly situated parties.

## XII.  COUNT FIVE, NEGLIGENCE PER SE

69.     Plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

70.     ELMCO violated the provisions of the SWDA/RCRA and the state Hazardous Waste Management Act prohibiting unpermitted disposal of hazardous wastes.  ELMCO intentionally violated those laws in the fall of 2006 when it failed to report the results of the Phase II Report and failed to undertake any further investigations into the results of the Phase II Report.

71.     Those laws were intended to prevent such unpermitted disposal, to prevent pollution, safe-guard public health and facilitate the orderly and permitted disposal of hazardous waste.  Those laws were specifically enacted to safeguard members of the public, including Plaintiffs, from such activities.

72.     As a direct and proximate result of these violations, the damages to land, the pollution and vapor exposure creating a risk of personal injury are the injuries these laws were intended to prevent.  Plaintiffs' lands have been damaged as a proximate result of the acts alleged here and the violations of the laws, and Plaintiffs are entitled to damages from ELMCO.  Because those acts and omissions include intentional or reckless behavior by ELMCO that has aggravated the impacts on Plaintiffs, Plaintiffs are entitled to punitive damages from ELMCO sufficient to punish ELMCO and to deter ELMCO and similarly situated parties.

## XIII.  COUNT SIX, NUISANCE

73.    Plaintiffs reallege all of the foregoing paragraphs and incorporate those as if fully set forth in this cause of action.

74.    Through the acts and omissions set forth above, ELMCO has created and maintained a nuisance by the release of hazardous waste into groundwater, soil, air, and into Liberty Creek and the Harpeth River.  The pollution substantially interferes with the Plaintiffs' use and enjoyment of their respective properties.  The pollution is visible, has killed aquatic life, and it creates a foul and offensive chemical odor at the Martin and Goins property.  The chemical seeps, trenches, soil piles and other impacts created and continue to create a nuisance for the Driskill family on their property.

75.    Plaintiffs allege the nuisance may be temporary or permanent, or both and will demand damages accordingly.  Because those acts and omissions include intentional or reckless behavior by ELMCO that has aggravated the impacts on Plaintiffs, Plaintiffs are entitled to punitive damages from ELMCO sufficient to punish ELMCO and to deter ELMCO and similarly situated parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court;

A.    Grant a preliminary injunction, based upon motion and hearing, to conduct appropriate remediation as may be established through expert testimony, such other and further relief as may be appropriate pending a final determination on the merits of the other causes of action, penalties, cost and attorney fees as allowed under statute;

B.    Find that the violations are ongoing and likely to continue.

C.    Issue a declaratory judgment stating that the defendants have violated the RCRA, the Clean Water Act, and the Tennessee state water quality laws;

D.     Empanel a jury to hear the trial of this cause;

E.     At the conclusion of that trial, enter a judgment of compensatory damages in favor of Plaintiffs sufficient to compensate Plaintiffs for the harms they have suffered and will continue to suffer as a proximate result of ELMCO's acts and omissions;

F.     At the conclusion of trial, enter a judgment of punitive damages in an amount sufficient to punish ELMCO for its intentional and/or reckless behavior and sufficient to deter ELMCO and similarly situated parties from engaging in such behavior in the future;

G.     Enter an order awarding plaintiffs recovery of all costs of this action, including reasonable attorney's fees, expert fees and allowable penalties under the RCRA and the Clean Water Act and other applicable laws including the Equal Access to Justice Act;

H.     Order the payment of fines as provided under federal law for violations of RCRA and the Clean Water Act; and

I.     Grant plaintiffs such further and additional relief as the Court deems just and appropriate to abate the ongoing conditions of pollution, compensate the plaintiffs, and reach an equitable result.

Respectfully submitted,

/s/  Elizabeth L. Murphy_____
Elizabeth L. Murphy   No. 20905
1102 17th Avenue South, Suite 401
Nashville, Tennessee  37212
615-327-0404

/s/  W. David Bridgers
W. David Bridgers, No. 016603
Neal & Harwell, PLC
150 Fourth Avenue North, Suite 2000
Nashville, TN  37219
615-244-1713

Counsel for Plaintiffs